# City of Philadelphia, Appellant, v. Charles F. Wall and Walter Tryday.

*Municipal corporations—Building laws—Act of April 21, 1855, sec. 6— Width of streets—Building on narrow streets.*

Under the Act of April 21, 1855, sec. 6, P. L. 265, a building may be erected on a street in the city of Philadelphia less than twenty-five feet wide, "laid out and wholly unimproved by brick or stone buildings" before the passage of the act, if the line of the building is made to recede to the twenty-five feet line; and this may be done before the street is actually opened to the width of twenty-five feet.

Garden street in the city of Philadelphia was dedicated to public use by deed dated October 11, 1849; it was laid out to the width of twenty-one feet, and was wholly unimproved by brick or stone building prior to April 21, 1855. Prior to July, 1894, the owner of a lot abutting on said street erected a brick stable on his lot fronting on Garden street two feet back from the building line. *Held*, that the erection two feet from the line was a practical widening of the street to twenty-five feet, and was not a violation of the Act of April 21, 1855, P. L. 265, sec. 6, providing that "no building of any kind shall be permitted to be erected on any street, court or alley here-

after to be laid out, or if laid out and wholly unimproved by brick or stone buildings, before the passage of this act, of a less width than twenty-five feet."

Argued Jan. 20, 1898. Appeal, No. 360, Jan. T., 1897, by plaintiff, from order of C. P. No. 4, Phila. Co., June T., 1894, No. 381, dismissing exceptions to report of referee. Before GREEN, WILLIAMS, McCOLLUM, MITCHELL and DEAN, JJ. Affirmed.

Exceptions to report of referee.

The bill of complaint alleged: (1) that defendant, Charles F. Wall, is the owner of the premises described in the bill of complaint; (2) that he contracted with the defendant, Walter Tryday, to erect a two-story brick stable on said lot; that said defendant applied for and obtained a permit to erect a stable on premises No. 881 N. Forty-first street, a copy of which permit is annexed to said bill of complaint; (3) that said Tryday erected said stable on said lot, but instead of fronting the same on Forty-first street, fronted the same on Garden street; (4) that the width of Garden street as now opened is twenty-one feet, the same having been dedicated of that width to public use; (5) that said Garden street was laid out of the width of twenty-one feet, and wholly unimproved by brick or stone buildings, prior to the passage of the act of April 21, 1855; (6) that the erection of said stable fronting on said Garden street is in direct violation of said act.

The complainant prayed for equitable relief.

1. That said defendants be enjoined from erecting said stable fronting on said Garden street.

2. That said defendants be required to take down and remove said stable.

The answer of defendants: (1) admitted the fact stated in first paragraph of the bill; (2) admitted that a contract was entered into between defendants for the erection of a stable on the rear of said premises, and that a permit was issued; (3) admitted that the stable was erected in accordance with the permit, fronting on said Garden street on the rear end of the lot mentioned; (4) demanded proof of the fourth and fifth allegations of the bill, and averred that the building was set back two feet so that when the owners of the lot on the opposite side of Garden

street when building also receded two feet the said Garden street would be of a width of twenty-five feet; (5) denied that the stable was erected in violation of law, but on the contrary averred that it was constructed strictly according to law.

The report of the referee, William C. Wilson, Esq., was as follows:

The referee finds from the bill, answer and proofs the following facts:

1. That said Charles F. Wall is the owner of said premises described in said bill of complaint.

2. That the said Charles F. Wall contracted with the defendant, Walter Tryday, to erect a two-story brick stable on said lot; that said defendant applied for and obtained a permit to erect a stable in rear of said premises, 881 N. Forty-first street, a copy of which permit is annexed to said bill of complaint.

3. That said Walter Tryday proceeded with the erection of said stable upon said lot of ground above described, fronting the same on Garden street, upon foundations set back two feet from the building line of said Garden street of a width of twenty-one feet, and the same is now finished in accordance with the permit given by the building inspectors.

4. That Garden street as now opened is twenty-one feet wide, and it was dedicated to public use by George Hutton by deed of dedication, dated October 11, 1849, duly executed, acknowledged and recorded in deed book G. W. C., No. 26, page 430, etc.

5. That said Garden street was laid out of the width of twenty-one feet and wholly unimproved by brick or stone building prior to the passage of the act of assembly, approved April 21, 1855. The evidence upon which the fourth finding of fact is based consisted principally of the deed of dedication dated October 11, 1849; the plan of Garden street prepared from the official record of the city by Joseph Johnson, surveyor and regulator of the eleventh district, showing Garden street of the width of twenty-one feet; and the testimony of said Joseph Johnson, Harriet Francis and Thomas A. Andrews, besides other old deeds, describing the premises conveyed as extending to Garden street laid out of the width of twenty-one feet. Mr.

Johnson testified that Garden street has been used as a public thoroughfare, and has been partly paved and curbed. Mrs. Francis testified that she knew Garden street as far back as 1852, opened and used by the public. Mr. Andrews testified that he knew Garden street as it is prior to 1855, and down to the present time. Other parts of the testimony, however, support the finding.

In support of the fifth finding, the referee quotes the following testimony:

Joseph Johnson: " Q. Your personal knowledge covers twenty-nine years? A. Yes, sir. Q. From your first recollection were there any improvements on Garden street between Westminster and Garden street? A. Nothing but frame stables. Q. You do not remember any stone structures on either side of the street? A. I do not remember any brick or stone structures on either side of street."

Mrs. Harriet Francis: "Q. Do you recollect it (Garden street) and recall it prior to 1855? A. I do. Q. Do you recollect whether it was improved by any brick or stone buildings between Ogden street and Westminster avenue prior to April, 1855? A. I do not think it was."

George Hancock, surveyor and engineer, and who was one of the city surveyors from 1855 to 1880 in charge of the district in which Garden street is situated: " Q. Do you recollect when Garden street was laid out? A. I do. Q. Who was it laid out by? A. By George Hutton." And whose entire testimony is conclusive as to the fact that Garden street was laid out, opened of the width of twenty-one feet and used by the public prior to the act of April 21, 1855, and that it was not improved by brick or stone buildings prior to April, 1855.

Thomas A. Andrews: " Q. Mr. Andrews, how long have you known Garden street? A. About fifty years. Q. You have known it then prior to April, 1855? A. Yes. Q. Was Garden street improved by any brick or stone buildings prior to April, 1855, as far as you can recollect?' A. No, sir. Q. Did you live in that vicinity at the time? A. I lived at the corner of Westminster avenue and Forty-first street, then called Morrison street."

It has been argued that Garden street, between Ogden and Parrish streets, was built upon prior to April, 1855, and that

therefore, as some portion of Garden street was built upon, it permitted any portion of said street to be built upon even though it was squares away from the section of Garden street upon which the stable in this case was built.

While we deem such argument fallacious if the facts were as stated, yet it is well to consider the testimony upon the question as to whether any portion of Garden street was improved by brick or stone buildings prior to the act of April 21, 1855.

The testimony of Mr. Andrews on this point is clear:

" Q. Mr. Andrews, when Judge Kelly would drive from Ogden street down to his stable did he drive over his own property? A. Yes, sir. Q. He owned the property all the way to Ogden street? A. He owned the entire block. Q. Do you remember whether or not there was a fence to prohibit anyone from going below Ogden street? A. The other end was closed, but when he altered his house several years afterwards he put an iron gate there through which he would drive in, but then the rear was always open. . . . Q. Judge Kelly's stable was built before 1855, was it not? A. In 1851. Q. On what line did Judge Kelly build his stable? A. Well, that I do not recollect. It was further back than present stable, because he rebuilt. Q. But it was on the line of Garden street? A. It faced Garden street; it was about twenty-five or thirty feet back of Garden street."

## CONCLUSIONS OF LAW.

Is the erection of said stable upon said lot of ground described in said bill of complaint fronting on Garden street in direct violation of the act of the general assembly, approved April 21, 1855, and should said defendants be required to take down and remove the same?

The Act of April 21, 1855, sec. 6, P. L. 265, reads as follows:

" No new dwelling-house, or other building within said city, shall front upon any street, alley or court, which shall be of less width than twenty feet, or without being made to recede, so that such street, alley or court shall be of that width, the buildings on each side equally receding, the damages for which widening shall be assessed and paid to the owner in the manner provided by law in case of opening new streets; every new dwelling-house shall also have an open space attached to it, in

the rear or at the side, equal to at least twelve feet square ; and no building of any kind shall be permitted to be erected on any street, court or alley hereafter to be laid out, or if laid out and wholly unimproved by brick or stone buildings before the passage of this act, of a less width than twenty-five feet; and every builder or owner who shall hereafter build otherwise than aforesaid shall pay to the said city $100, to be recovered with costs, as debts of that amount may by law be recovered, and shall be restrained by injunction."

By a careful reading of said act it will be seen that there was in the minds of the legislature evils which it was their purpose to remedy, that is to say, there were narrow streets within the limits of the city of Philadelphia, built upon of the width of twenty feet or less, and some not built upon of a width less than twenty-five feet. For those already built upon of a less width than twenty feet the remedy was to prevent further erection of new buildings fronting on said street, unless they recede to the twenty feet line, but there was nothing to prevent new buildings having their side on the twenty feet line. As was said in the statement of Eli K. Price in Guarantee Company v. City, 30 Leg. Int. 240, "the purpose was to widen the narrower one (meaning street), where the front was on it only, leaving the entrance to it between buildings that only flanked upon it undisturbed. If more had been intended other words would have been required." Where the street was of less width than twenty-five feet and wholly unimproved by brick or stone, the remedy was to prevent the erection of all buildings whether they front or side upon said street, unless they recede to the twenty-five feet line. The effect of this was to have all new streets twenty-five feet wide. The former section of the act, in relation to twenty feet, refers to streets already built upon, and the latter section, in relation to twenty-five feet, refers to streets not built upon or not laid out.

According to the plaintiff's contention, if the street was of a less width than twenty-five feet, and wholly unimproved by brick or stone buildings, the act absolutely prohibits the erection of any building until said street is opened to the width of twenty-five feet, and in such case injunction would lie to prevent the erection of the building, or if having so built after the passage of the act, from the continuance of such building contrary to the requirement of the act.

In this case we have only to consider the act so far as it applies to a street less than twenty-five feet wide, and wholly unimproved by brick or stone building prior to the passage of the act.

It has been argued with much force by the city's counsel that this apparent prohibition is absolute, and that no building of any kind or description could be erected on a street less than twenty-five feet wide. If this was the intention of the legislature when the act was passed, it would be in effect a practical confiscation of land abutting on a street less than twenty-five feet, and until the street was opened to the full width of twenty-five feet no building of any kind could be erected on any line with an outlet to the street. In City v. Michener, 30 Leg. Int. 116, 10 Phila. 30, Brewster, J., draws no distinction between streets of a less width than twenty feet and those of a less width than twenty-five feet. In referring to the act, he says—"Its plain intent and meaning were to secure a width of twenty feet for all highways then existing, and twenty-five feet for all streets hereafter to be laid out. To accomplish this purpose, and thus to beautify the city, and to secure the health of its inhabitants, the law provides for the receding of every new building, and secures compensation to the owner." If the contention of the city was correct the effect would be to compel the defendants to tear down the building, wait until the street was widened, and then reconstruct it on exactly the same foundation lines. This would be an unnecessary destruction of property never contemplated by the author of the law, Mr. Eli K. Price, or the legislature. That the act should be read as an entirety and that the clause "or without being made to recede so that such street. alley or court shall be of that width, the buildings on either side equally receding" refers to twenty-five feet streets as well as to twenty feet streets, is clear to your referee. The act is an entire act, the penalties for the violation of either class are the same, and no possible reason can exist for separating the two classes, and forcing a construction of the act that in the opinion of your referee was never contemplated.

For these reasons the referee finds for defendants, and recommends that the bill be dismissed.

The court dismissed exceptions to referee's report.

*Error assigned* was in dismissing exceptions to referee's report.

*Joseph Savidge, Norris S. Barrett* and *John L. Kinsey,* for appellant.—Undoubtedly it was the intention of the act to prohibit any building being erected at any time on an unimproved street of less width than twenty-five feet, for it had been intended that such street could be built upon before it was legally and properly opened along the entire line of the width of twenty-five feet, there would have been the same provision inserted in this section of the act giving the right to recede on the twenty-five feet line as was inserted in relation to streets already built upon. It is to be presumed, in making the distinction between improved and unimproved streets, the legislature had some well defined purpose in view.

*Charles H. Edmunds,* for appellees, was not heard, but in his printed brief said: The section does not simply provide " that no building of any kind shall be permitted to be erected on any street, court, or alley of a width less than twenty-five feet." A most cursory examination shows that all that is required to give full compliance with its provisions is that property owners desiring to erect improvements upon streets laid out and wholly unimproved, etc., of a less width than twenty-five feet, shall recede so that such street, alley, or court shall be of the required width. To place any other construction upon the section would be absurd.

PER CURIAM, February 7, 1898 :

The decree in this case is affirmed upon the findings of fact and conclusions of law contained in the report of the referee in the court below.

Appeal dismissed and decree affirmed at the cost of the appellant.